IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH JOHNSON,

       Plaintiff,                No. 2:09-cv-2103 JAM JFM (PC)

   vs.

G. BISHOP, et al.,

       Defendants.        FINDINGS & RECOMMENDATIONS

_____/

       Plaintiff is a state prisoner proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's claims raised in the complaint filed July 30, 2009, arising from allegations that while at Mule Creek State Prison ("MCSP"), defendants violated his Eighth and Fourteenth Amendment rights by facilitating a race-motivated attack on plaintiff, a black inmate, by a white inmate; attempting to cover-up the incident by issuing a falsified Rules Violation Report ("RVR"); and violating plaintiff's due process rights at the hearing on the RVR by denying plaintiff's request to call a witness.  Plaintiff also claims that his rights under the Equal Protection clause were violated when he was removed from the Enhanced Outpatient Program ("EOP"), a mental health program, on account of his race.  This matter is before the court on defendants' motion for summary judgment.  Plaintiff opposes the motion.

1                                            FACTS

2           All facts are undisputed unless noted otherwise.  At all times relevant to this

3   action, plaintiff, a black inmate, was housed at MCSP.  Inmate Clem, a white inmate and not a

4   party to this action, was also housed at MCSP.  Defendant Bishop was a correctional officer at

5   MCSP.  Lieutenant Kudlata was a senior hearing officer at MCSP.

6           It is undisputed that on November 28, 2008, plaintiff and Clem were involved in

7   an altercation near plaintiff's cell.  It is also undisputed that after the altercation, plaintiff was

8   transferred to Administrative Segregation ("AdSeg") and charged with Battery on an Inmate,

9   while Clem was merely returned to his assigned housing and not charged with any violations.  It

10  is further undisputed that plaintiff sustained an injury on his left hand and Clem sustained an

11  injury on his face.

12          All remaining facts are in dispute.  Plaintiff states that on the day in question, he

13  was watching television with his cellmate when Clem approached his cell door.  Pl.'s Dep. at 40.

14  Plaintiff had never met or interacted with Clem in the past.  Id.  In the conversation that ensued,

15  Clem accused plaintiff of being in possession of one of Clem's music CDs; plaintiff denied the

16  accusation and told Clem to step away from the cell door.  Id.  Clem responded angrily, saying

17  "What you mean get away from your door?  Nigger, I'll get your door cracked and come in there

18  and kick your ass."  Id.  Clem then called out to Bishop, "Bishop, open F-ing 114."  Id; Pet., Ex.

19  A at 31.  After Clem yelled again to Bishop to open the door, plaintiff's cell door opened and

20  Clem stepped inside.  Pet., Ex. A at 31.  Plaintiff claims he feared for his safety and responded by

21  acting in self-defense, punching Clem one time in the face with his left hand.  Id.

22          Defendants dispute this version of events.  In the RVR issued following the

23  incident, Bishop states that while he was releasing inmates into the dayroom, he believed he saw

24  plaintiff's cellmate flash the cell lights to communicate a desire to be released from the cell to

25  shower.  Bishop Decl., ¶ 5.  After hearing an inmate yell to open the door and upon believing that

26  he saw a cell light flash, Bishop opened the door.  Id. ¶ 6.  Bishop then maintains that he saw

1  plaintiff step out and strike Clem, a Building 5 porter who was standing near the cell door, in the

2  facial area one time with his right hand.  Id. ¶ 11; Pet., Ex. A at 28.  Plaintiff was ordered to the

3  ground, handcuffed and eventually rehoused in AdSeg while Clem was returned to his assigned

4  housing.  Pet., Ex. A at 28.

5         On the evening of November 28, 2008, plaintiff filed a 602 inmate grievance

6  form.[1]  In the grievance, plaintiff repeated the allegations aforementioned.  See Pet., Ex. A at 31.

7  Plaintiff's appeals were denied at all levels of review.  See Pet., Ex. A at 14-16; 22-26.

8         On December 18, 2008, a hearing was held as a result of the pending battery

9  charge against plaintiff.  See Pet. at 12.  Defendant Lieutenant Kudlata was the senior hearing

10  officer.  Id. at 5.  During the hearing, plaintiff claims Kudlata was biased against him and denied

11  plaintiff the right to call his cellmate as a witness.  Id.  Relying upon Bishop's statement and

12  plaintiff's medical record, plaintiff was found guilty of battery and assessed a 90-day loss of

13  behavioral credit.  Id. at 12.

14         On February 10, 2009, plaintiff was removed from EOP by the Institutional

15  Classification Committee ("ICC").  Pl.'s Dep., Ex. C.  Neither defendant was part of the ICC and

16  neither made the decision to remove plaintiff from EOP.  Bishop Decl. ¶ 13; Kudlata Decl. ¶ 6.

17         Plaintiff asserts that he was removed from EOP due to the false disciplinary

18  charge and conviction.  See Pl.'s Dep. at 15.  Per plaintiff, once Bishop opened the cell door, it

19  produced a "domino effect" that eventually resulted in plaintiff's removal from EOP.  That is,

20  plaintiff argues that because he was forced to administratively appeal the incident, he was no

21  longer found to be in need of mental health care.  Id.

22  /////

23

24      [1] California prison regulations provide administrative procedures in the form of one
informal and three formal levels of review to address an inmate's claims.  See Cal. Code Regs.
25  tit. 15, §§ 3084.1-3084.7.  Administrative procedures generally are exhausted once a plaintiff has
received a "Director's Level Decision," or third level review, with respect to his issues or claims.
26  Cal. Code Regs. tit. 15, § 3084.5.

1                SUMMARY JUDGMENT STANDARDS UNDER RULE 56

2           Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant

3 summary judgment if the movant shows that there is no genuine dispute as to any material fact

4 and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]  A shifting

5 burden of proof governs motions for summary judgment under Rule 56.  Nursing Home Pension

6 Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir.

7 2010).  Under summary judgment practice, the moving party

8       always bears the initial responsibility of informing the district court of the basis
for its motion, and identifying those portions of "the pleadings, depositions,
9       answers to interrogatories, and admissions on file, together with the affidavits, if
any," which it believes demonstrate the absence of a genuine issue of material
10      fact.

11 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

12 56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

13 only prove that there is an absence of evidence to support the non-moving party's case."  In re

14 Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R.

15 Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

16 not have the trial burden of production may rely on a showing that a party who does have the trial

17 burden cannot produce admissible evidence to carry its burden as to the fact").

18          If the moving party meets its initial responsibility, the opposing party must

19 establish that a genuine dispute as to any material fact actually does exist.  See Matsushita Elec.

20 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary

21 judgment, the opposing party must demonstrate the existence of a factual dispute that is both

22 material, i.e., it affects the outcome of the claim under the governing law, see Anderson v.

23 Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores

24

25       [2]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule
26 56, "[t]he standard for granting summary judgment remains unchanged."

1   Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such

2   that a reasonable jury could return a verdict for the nonmoving party,'" FreecycleSunnyvale v.

3   Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A

4   party opposing summary judgment must support the assertion that a genuine dispute of material

5   fact exists by:  "(A) citing to particular parts of materials in the record, including depositions,

6   documents, electronically stored information, affidavits or declarations, stipulations . . . ,

7   admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

8   not establish the absence or presence of a genuine dispute, or that an adverse party cannot

9   produce admissible evidence to support the fact."[3]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

10  the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

11  Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

12       In resolving a summary judgment motion, the evidence of the opposing party is to

13  be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may be

14  drawn from the facts placed before the court must be viewed in a light most favorable to the

15  opposing party.  See Matsushita, 475 U.S. at 587; In re Oracle Corp. Sec. Litig., 627 F.3d at 387.

16  However, to demonstrate a genuine factual dispute, the opposing party "must do more than

17  simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

18  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

19  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

20       On November 12, 2009, the court advised plaintiff of the requirements for

21  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

22  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and

23  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

24  _____

25       [3] "The court need consider only the cited materials, but may consider other materials in
    the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to
    support or dispute a fact cannot be presented in a form that would be admissible in evidence."

26  Fed. R. Civ. P. 56(c)(2).

DISCUSSION

1          Defendants seek summary judgment on the following grounds: (1) Bishop did not

violate plaintiff's Eighth Amendment rights; (2) plaintiff cannot maintain an action for damages

against defendants because plaintiff suffered de minimus injuries; (3) plaintiff is barred from

maintaining this suit by Heck v. Humphreys, 512 U.S. 477 (1994); (4) defendants were not

involved in the decision to remove plaintiff from EOP; and (5) defendants are entitled to

qualified immunity.

1.     Heck Bar

          The court turns first to defendants' Heck argument.  Defendants argue that

plaintiff's claim is barred by Heck because a judgment in plaintiff's favor would necessarily

characterize plaintiff's actions as self-defense, calling into question the validity of the battery

conviction.  The court agrees.

          In Heck, the Supreme Court held that, where a plaintiff's successful prosecution

of a section 1983 claim would imply the invalidity of a sentence or conviction, the plaintiff must

first prove that the underlying conviction has been reversed on direct appeal, expunged by

executive order, declared invalid by an authorized state tribunal, or called into question by the

issuance of a writ of habeas corpus.  "Heck, in other words, says that if a criminal conviction

arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior

for which section 1983 damages are sought, the 1983 action must be dismissed."  Smithart v.

Towery, 79 F.3d 951, 952 (9th Cir. 1996).  In applying Heck, a district court therefore must

"consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of

[the plaintiff's] conviction or sentence; if it would, the complaint must be dismissed unless the

plaintiff can demonstrate that the conviction or sentence has already been invalidated."  512 U.S.

at 486-87.

          Plaintiff's section 1983 claim stems from the altercation between him and fellow

inmate Clem.  Plaintiff alleges that Bishop opened the cell door to facilitate Clem's attack on

6

1   plaintiff.  As a result of this incident, plaintiff claims Bishop falsely charged plaintiff with battery

2   on an inmate.  Plaintiff received a hearing on this disciplinary charge and was found guilty, due,

3   in part, to Kudlata's bias against plaintiff, thereby receiving a 90 day credit forfeiture of

4   behavioral credit as a penalty.  In so finding, the hearing officer credited as true Bishop's version

5   of the incident, wherein plaintiff initiated the physical altercation by striking Clem, and relied on

6   medical records.  The result of a prison disciplinary hearing constitutes a conviction for purposes

7   of applying Heck.  Edwards v. Balisok, 520 U.S. 641, 646 (1997).  Accordingly, plaintiff's

8   section 1983 claim must be dismissed if it calls into question the validity of either his conviction

9   for battery or resulting sentence.  Id.; see Sharp v. Morrison, 2010 U.S. Dist. LEXIS 72649, *13-

10  15 (E.D. Cal. July 19, 2010).

11          Assuming plaintiff has a liberty interest to be free from loss of good time credits,

12  he is entitled to due process protections under the Fourteenth Amendment as follows: 1) written

13  notice of the charges; 2) a statement of the evidence relied upon by the prison officials and the

14  reasons for disciplinary action; 3) an opportunity to call witnesses and present documentary

15  evidence when permitting him to do so would not unduly threaten institutional safety and goals,

16  and 4) assistance from staff when the inmate is illiterate or the issues presented in the charge are

17  complex.  Wolf v. McDonnell, 418 U.S. 539, 563-66, 570 (1974).  Due process is satisfied as

18  long as there is some evidence to support the decisions of the disciplinary board.  Cato v.

19  Rushen, 824 F.2d 703, 704 (9th Cir. 1987) (citing Superintendent, Massachusetts Correctional

20  Institution v. Hill, 472 U.S. 445, 448 (1985)).

21          If the court were persuaded by plaintiff's charges and granted him relief on his

22  due process claims, it would render the rules violation and subsequent good-time credit forfeiture

23  invalid.  Such a claim may not be brought under section 1983 "unless and until the conviction or

24  sentence is reversed, expunged, invalidated, or impugned by the grant of writ of habeas corpus."

25  Butterfield v. Bail, 120 F.3d 1023, 1025 (9th Cir. 1997).  Plaintiff's claim is barred by the

26  favorable termination rule under Edwards v. Balisok, 520 U.S. 641, 648 (1997).

1           In Edwards, a prisoner brought a claim under section 1983 challenging a loss of

2    good-time credits based on alleged due process violations at his disciplinary proceeding because

3    the hearing officer refused to ask questions of requested witnesses, denied him the right to

4    present evidence on his own behalf, and lied about the nonexistence of witness statements.  520

5    U.S. at 646-47.

6           The Supreme Court has spoken loud and clear that the only remedy in federal

7    court for a prisoner seeking restoration of lost good-time credits is habeas corpus, not section

8    1983.  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Heck, 512 U.S. at 487 (1994).  This is

9    because a suit challenging deprivation of good-time conduct credits necessarily challenges the

10   duration of the inmate's confinement, and Congress has determined that habeas corpus is the

11   appropriate remedy for prisoners attacking the validity of the fact and length of their

12   confinement.  Preiser, 411 U.S. at 487-88, 490; see also Wolff v. McDonnell, 418 U.S. 539,

13   570-71 (1974) (explaining there is a protected liberty interest in shortened prison sentence which

14   results from good-time credits).  A challenge under section 1983, seeking only damages and

15   declaratory relief for procedural due process violations is also barred if the nature of the

16   challenge would necessarily imply the invalidity of the deprivation of good-time credits.

17   Edwards, 502 U.S. at 643 (citing Heck, 512 U.S. at 487).

18          In Edwards, the Court explained that in response to the obvious procedural defect

19   claimed by Edwards, which was that he had been precluded from submitting witness statements

20   at his disciplinary proceeding, state and federal courts will reinstate good-time credits, absent a

21   new hearing.  Edwards, 520 U.S. at 647 (citations omitted).  Edwards' claim, however, went

22   further.  He claimed that the cause of the exclusion was the deceit and bias of the hearing officer.

23   Edwards claimed the hearing officer lied about the nonexistence of witness statements,

24   intentionally denying him the right to present these witnesses. "A criminal defendant tried by a

25   partial judge is entitled to have his conviction set aside, no matter how strong the evidence

26   against him." Id. (citations omitted).  "The due process requirements for a prison disciplinary

1   hearing are in many respects less demanding than those for criminal prosecution, but they are not

2   so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence

3   of innocence.  Id. (citing cf. Wolff, 418 U.S. at 570-71).

4              Here, plaintiff makes the same challenge made by Edwards.  Just as the Court

5   concluded in Edwards, this claim necessarily implies the invalidity of the punishment imposed

6   and is not cognizable under section 1983.  For plaintiff to prevail, this court must declare the

7   disciplinary conviction invalid due to the bias and dishonesty of the defendants.  Such an

8   invalidated conviction must be set aside.  Edwards, 520 U.S. at 647.  Then, the setting aside of

9   the disciplinary conviction would necessitate return of the forfeited good-time credits and would

10  correspondingly reduce the plaintiff's sentence.  This is not a case like Ramirez v. Galaza, 334

11  F.3d 850 (9th Cir. 2003), where the only consequence of invalidating the disciplinary conviction

12  is the revocation or termination of housing placement, without affecting the length of

13  incarceration.

14             Based thereon, summary judgment should be granted as to this claim.

15  2.    Removal from the Enhanced Outpatient Program

16             Defendants also seek dismissal of plaintiff's claim that his removal from EOP

17  violated plaintiff's Equal Protection rights.

18             The "Equal Protection Clause of the Fourteenth Amendment commands that no

19  State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

20  essentially a direction that all persons similarly situated should be treated alike."  City of

21  Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

22  State prison inmates retain a right to equal protection of the laws guaranteed by the Fourteenth

23  Amendment.  Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Lee v. Washington,

24  390 U.S. 333, 334 (1968)).

25             In the prison context, however, even fundamental rights such as the right to equal
            protection are judged by a standard of reasonableness-specifically, whether the
26           actions of prison officials are "reasonably related to legitimate penological

9

interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also Jordan v. Gardner, 986 F.2d 1521, 1530 (9th Cir. 1993) (equal protection concerns fall under Turner). Walker, 370 F.3d at 974.

An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Generally, there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Here, plaintiff does not argue that either defendant directly caused him to be removed from EOP. In fact, plaintiff readily admits that the decision to remove him from EOP was made by a mental health professional. See Pl.'s Dep. at 16. Instead, plaintiff argues that due to the altercation with Clem and the subsequent disciplinary hearing and conviction, a "domino effect" existed that eventually led to his removal from EOP.

Examination of the record and the applicable law reveals that plaintiff's claim fails because, first, the link between defendants' actions and his removal from the mental health program is simply too attenuated; and, second, plaintiff's argument that if Clem, a white inmate, was a participant in EOP, he would not have been removed from the program is unsupported by any evidence. To the extent that plaintiff claims defendants discriminated against him because of his race, plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated

differently than other similarly situated inmates without a rational relationship to a legitimate state purpose.

Thus, there is no genuine issue as to any material facts regarding plaintiff's Equal Protection claim.  Therefore, summary judgment should be granted.

Because the undersigned recommends granting defendants' motion for summary judgment as to both of plaintiff's claims, the court need not address the remaining proposed grounds for dismissal.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment be granted;

2.  This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 2, 2011.


UNITED STATES MAGISTRATE JUDGE

/014;john2103.msj

11